**A.L.G. ENTERPRISES and W. Scott Berry, Appellants,**

v.

**HUFFMAN, Robert W. and Maxine Huffman, Appellees.**

**No. 13–83–197–CV.**

Court of Appeals of Texas, Corpus Christi.

Nov. 3, 1983.

Jerry T. Steed, Roy J. True, True & McLain, Dallas, for appellants.

Kenneth F. Nye, Dallas, for appellees.

Before NYE, C.J., and YOUNG and KENNEDY, JJ.

## OPINION

NYE, Chief Justice.

This suit was brought by Robert and Maxine Huffman (Huffmans) to enjoin the foreclosure of real property held as security on a promissory note and to rescind all documents concerning a sale of a liquor store by defendants, A.L.G. Enterprises, to plaintiffs. The Huffmans claimed fraud and misrepresentation as grounds for the rescission or, alternatively, that there was a mutual mistake between the parties as to the current financial condition of the business which warranted rescission of the sales contract.

The defendants counterclaimed, seeking recovery of all money owed on the promissory note, attorney's fees, interest and judicial foreclosure of the collateral securing the promissory note. The trial court granted a temporary injunction pending a trial

on the merits. At trial, the jury found no fraud or misrepresentation, but that there had been a mutual mistake between the parties as to the current financial condition of the liquor store. The trial court rendered judgment for the plaintiffs, rescinding the contract and awarded them $44,028.00, which represented the amount paid to the defendants since August 1980, pursuant to the contract of sale.

The appellant, Enterprises, brings ten points of error. The first seven may be considered together because they concern whether the trial court had before it any evidence or sufficient evidence on which to render judgment for the Huffmans. The jury answered Special Issue No. 5 affirmatively:

> "Was the contract of sale involved in this case based upon or due to a mutual mistake of both parties as to the current financial condition of the liquor store in question?"

In August or September 1979, appellees (Huffmans) approached Enterprises through its agent, Al Grammatico, to inquire about the purchase of a liquor store owned by Enterprises. Enterprises is a small, closely held corporation. The agent of Enterprises had known the Huffmans for over twenty years. He indicated a willingness to sell and instructed the Huffmans to contact Enterprises' accountant and attorney regarding the purchase. The accountant provided the Huffmans with an Income and Expense Statement for fiscal year 1978, and a current Income and Expense Statement for an eleven-month period ending August 1979. During the first negotiations, the Huffmans enlisted the assistance of their own accountant. The parties agreed to a sale price of $125,000.00. However, the sale was not consummated at that time because Enterprises did not believe that the Huffmans were sufficiently collateralized.

The Huffmans approached Enterprises a second time in June of 1980. Mr. Grammatico, the agent, indicated an interest in selling as soon as possible since his wife, who had assisted in the operation of his business, was ill. He was spending a great deal of time with her and was unable to watch the store like he used to do. This time the sale price was reduced to $100,000.00. The Huffmans did not consult their accountant before consummating the purchase.

Huffman met with Grammatico, and, on June 18, 1980, he sent Enterprises a proposal for the purchase of the liquor store. About two weeks before the sale, Mrs. Huffman testified that she was concerned about the financial condition of the liquor store. At her husband's request, she visited Mr. Grammatico. The conversation that took place at this meeting is controversial. It forms the basis upon which the Huffmans' claim of mutual mistake is founded. Mrs. Huffman brought with her the Profit and Loss Statement reflecting an 11-month period ending August 1979 given to the Huffmans during the 1979 negotiations. She testified that she asked Mr. Grammatico what were the *current gross sales* for the liquor store. She testified, in response to her question about the current gross sales, that Mr. Grammatico wrote the figures 594 on the 1979 Income and Expense statement, meaning gross sales of $594,000.00. However, deposition testimony of Mrs. Huffman introduced by way of impeachment indicates that she was unclear about the question she asked Mr. Grammatico at that meeting.

Mr. Grammatico's testimony also conflicts with the testimony given by Mrs. Huffman at trial. He testified that Mrs. Huffman asked him if the figures on the 1979 Income and Expense Statement that she had brought with her were *accurate*, and he testified that he told her that the gross sales for the fiscal year ending September 1979 were actually approximately $594,000.00, rather than $546,000.00, which was indicated in the statement she had in her possession. The figure $594,000.00 was approximately the correct gross sales figure for fiscal year 1979. During the second negotiations, the Huffmans did not contact either Grammatico's accountant or their own accountant as they had done during the first negotiations. Mr. Grammatico had, on more than one occasion, told Mr.

Huffman to contact his accountant or attorney with questions regarding the business because he didn't know anything about that part of the business and had them handle everything. The testimony of all parties is in accord regarding the fact that Grammatico had encouraged the Huffmans to speak with his accountant.

After the sale had been consummated, the Huffmans learned that the gross sales for the fiscal year beginning October 1, 1980, were actually about $385,000.00 as of the time of the purchase. Testimony was introduced at trial that, at the time of the meeting between Grammatico and Mrs. Huffman, Grammatico did not have the current financial data available to him. The jury found that there had been a mutual mistake between the parties as to the financial condition of the business at the time of the sale.

■■■ "Mutual mistake" of fact occurs when both parties to a transaction have a belief that a present fact exists, which is material to the transaction, that does not actually exist. 14 Tex.Jur.3d Contracts § 95 (1981); *Turberville v. Upper Valley Farms,* 616 S.W.2d 676 (Tex.Civ.App.—Corpus Christi 1981, no writ). It is a mistake common to both parties to the contract, each laboring under the same misconception. *Schmaltz v. Walder,* 566 S.W.2d 81 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Hanover Insurance Co. v. Hoch,* 469 S.W.2d 717 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.); *Newell v. Mosley,* 469 S.W.2d 481 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.). A mutual mistake is one common to both or all parties, wherein each labors under the same misconception respecting a material fact or the terms of the agreement. *Newsom v. Starkey,* 541 S.W.2d 468 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.); *Eggert v. American Standard Insurance Co.,* 404 S.W.2d 99, 105 (Tex.Civ.App.—Corpus Christi 1966, no writ).

■■■ To prove a mutual mistake, the evidence must show that both parties had the same misunderstanding of the same material fact. *Newsom v. Starkey,* supra, at

472. In order for a party to be relieved on the ground of mutual mistake of fact, the mistake must deal with a material part of the contract. *Durham v. Uvalde Rock Asphalt Co.,* 599 S.W.2d 866, 870 (Tex.Civ.App.—San Antonio 1980, no writ). The mistake must involve the subject matter of the contract and the substance thereof. It may not relate merely to a collateral matter. *Brown-McKee, Inc. v. Western Beef, Inc.,* 538 S.W.2d 840, 845 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.). An act done or a contract made under a mutual mistake of material fact is avoidable and relievable in equity. 38 Tex.Jur.2d Mistake § 4 (1962).

In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well established test set forth in *Glover v. Texas General Indemnity Company,* 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Allied Finance Company v. Garza,* 626 S.W.2d 120 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error,* 38 Tex.L.Rev. 359.

Mrs. Huffman testified that she believed, based upon her conversation with Mr. Grammatico, that the gross sales as of July 1980 were $594,000.00. The record does not show that at any time Grammatico was similarly mistaken about this fact. At most, Mr. Grammatico was mistaken as to the question asked of him by Mrs. Huffman. Undisputed evidence admitted at trial shows that Mr. Grammatico did not actually know what the gross sales were as of the time of their meeting. There was no evidence to indicate that Grammatico believed the gross sales for the current fiscal year of the business to be $594,000.00 as of July 1980.

The meeting between the two took place in a haphazard fashion. Mrs. Huffman came by the office to talk with Mr. Grammatico. Testimony at trial indicated that the length of the meeting was short: between five minutes and twenty minutes. It did not include Mr. Huffman, who had been the one primarily responsible for negotiating the sale. Mr. Huffman testified that he

believed the purchase would be a wise one, but would not make a final decision without the concurrence of his wife. He did not request any additional financial information during the second negotiations from either Grammatico's accountant or their own.

■ Because there is some evidence to show that there may have been two mistakes made, the issue then becomes whether two mistakes of a different nature can constitute sufficient evidence of a mutual mistake. We hold that it cannot. Mistakes may be considered mutual mistakes if they relate to the same subject matter. They need not be identical. *Volpe v. Schlobohm,* 614 S.W.2d 615 (Tex.Civ.App.—Texarkana 1981, no writ).

■ The greater weight and preponderance of all of the evidence shows that the mistakes here were not opposite understandings of the same *fact.* The mistake according to Mrs. Huffman was a mistake of a fact or a misinterpretation of a statement made. Mr. Grammatico's mistake was either a misinterpretation of a question asked by Mrs. Huffman or no mistake at all, depending on the question asked by Mrs. Huffman. This evidence is not the type of mistake which is characterized as a mutual mistake. We hold that the evidence is insufficient to show that *both* parties were mistaken as to the *same* material fact. Appellant's second point of error is sustained.

All of appellant's other points of error have been considered and are overruled. The judgment of the trial court is reversed, and the case is remanded for a new trial.