John Robert **SWEENEY**, Appellant,

v.

**TACO BELL, INC.**, Appellee.

No. 2–91–068–CV.

Court of Appeals of Texas, Fort Worth.

Jan. 29, 1992.

Rehearing Overruled March 17, 1992.

Law Office of Robert L. Crill and Robert L. Crill, Fort Worth, for appellant.

Murphy, Moore & Bell, and Luis A. Galindo, Fort Worth, for appellee.

Before DAY, FARRIS and MEYERS, JJ.

## OPINION

DAY, Justice.

John Robert Sweeney appeals the grant of a summary judgment in favor of Taco Bell, Inc. Sweeney filed a wrongful termination suit against Taco Bell, and Taco Bell answered by alleging the affirmative defense of release. *See* TEX.R.CIV.P. 94. After a hearing, the trial court granted Taco Bell's motion for summary judgment based upon release.

We affirm.

The release alleged to bar this action arose out of an injury suffered by Sweeney while employed at Taco Bell. When Sweeney returned to work after the injury, he was advised by the employer that his employment had been terminated because of the employer's dissatisfaction with his work. Sweeney believed that he was fired in retaliation for filing his worker's compensation claim. In July 1988, the Industrial Accident Board awarded Sweeney $7,800 for his injuries. Both Sweeney and the insurer, National Union Fire Insurance Company, appealed. However, the parties entered negotiations and reached a compromise settlement.[1] The trial court entered an agreed judgment in September 1988. Thirteen months later, in October of 1989, Sweeney filed suit against Taco Bell for

---

**1.** The agreement for judgment provides that: "It is further agreed that upon payment ... the same shall be in full release of the said National Union Fire Insurance Company of Pittsburgh, Pennsylvania and Taco Bell Restaurants of any and all claims for alleged disability resulting from the described accident *and damages, if any, allegedly resulting from John R. (Robert) Sweeney's termination at* Taco Bell # 1067...." [Emphasis added.]

damages arising out of his alleged wrongful termination.

In his sole point of error, Sweeney asserts that the trial court erred in granting the appellee's motion for summary judgment. Sweeney posits that at the time he signed the release and agreement for judgment and at the time the court entered the workman's compensation judgment against the worker's compensation insurance company, he *had never discussed nor bargained for the settlement of his wrongful termination claim with Taco Bell.*

In a summary judgment case, the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); TEX.R.CIV.P. 166a. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. *Great American R. Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence in the light most favorable to the non-movant. *See id.* In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the non-movant will be accepted as true. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex. 1984); *Farley v. Prudential Ins. Co.,* 480 S.W.2d 176, 178 (Tex.1972). Every reasonable inference from the evidence must be indulged in favor of the non-movant and any doubts resolved in his favor. *Montgomery,* 669 S.W.2d at 311. Evidence which favors the movant's position will not be considered unless it is uncontroverted. *Great American,* 391 S.W.2d at 47. The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of his cause of action or defense as a matter of law. *City of Houston,* 589 S.W.2d at 678.

Sweeney claims that the release was entered into under a mutual mistake, and that

under the doctrine of *Williams v. Glash,* 789 S.W.2d 261 (Tex.1990), he is entitled to set the release aside. We disagree.

As a general rule, a written release cannot be avoided on the ground that the releasor was ignorant of, or mistaken about, the contents of the release, or failed to read it before signing. A settlement agreement and release, valid on its face, will not be avoided on the ground that the releasor was ignorant of or mistaken as to the contents of the release or failed to read it before signing. Fraud or other improper influence, however, is an exception to this rule. *Morris v. Millers Mut. Fire Ins. Co.,* 343 S.W.2d 269, 270 (Tex.Civ.App.—Fort Worth 1961, no writ). Fraud, mutual mistake, and lack of consideration are all affirmative defenses for the enforceability of a release. *Tobbon v. State Farm Mut. Auto. Ins. Co.,* 616 S.W.2d 243, 245 (Tex. Civ.App.—San Antonio 1981, writ ref'd n.r.e.). Thus, while Taco Bell had the burden of proving the affirmative defense of release, Sweeney had the burden of proving that the release should be set aside.

Sweeney's summary judgment evidence consisted of affidavits by himself and his attorney stating: the termination claim was neither discussed nor bargained for in the settlement of his earlier claim; and at the time he signed the release, he understood that he was only releasing his worker's compensation claim against National Union Fire, despite the language of the release.

In *Williams,* 789 S.W.2d at 264–65, the Texas Supreme Court discussed the enforceability of a release as it pertained to personal injuries which are unknown at the time the release is signed. Under Texas law, said the court, a release is a contract and is subject to avoidance, on grounds such as fraud or mistake, just like any other contract. *Id.* at 264; *Loy v. Kuykendall,* 347 S.W.2d 726, 728 (Tex.Civ.App.— San Antonio 1961, writ ref'd n.r.e.). Pursuant to the doctrine of mutual mistake, when parties to an agreement have contracted under a misconception about or ignorance of a material fact, the agreement will be avoided. *See, e.g., A.L.G. Enter-*

*prises v. Huffman,* 660 S.W.2d 603, 606 (Tex.App.—Corpus Christi 1983), *aff'd as reformed per curiam,* 672 S.W.2d 230 (Tex.1984). Additionally, the parol evidence rule does not bar extrinsic proof of mutual mistake. *Santos v. Mid–Continent Refrigerator Co.,* 471 S.W.2d 568, 569 (Tex.1971) (per curiam). However, the doctrine of mutual mistake does not prevent a party to a release from deliberately assuming the risk of future, unknown injuries.

The court went on to hold that the law of mutual mistake applies to personal injury releases the same as to other contracts. If it can be established that a release sets out a *bargain that was never made,* it will be invalidated. *Williams,* 789 S.W.2d at 265 (emphasis in original). If the objective manifestation of the parties' intent indicates that no release of unknown personal injuries was contemplated, the courts cannot provide intent for them.

The court gave some guidance as to when a release may be so invalidated. The court stated:

> In a subsequent suit for an unknown injury, once the affirmative defense of release has been pleaded and proved, the burden of proof is on the party seeking to avoid the release to establish mutual mistake. [This question] is determined not by self-serving subjective statements of the parties' intent ... but rather solely by objective circumstances surrounding execution of the release, such as the knowledge of the parties at the time of signing concerning the injury, the amount of consideration paid, the extent of negotiations and discussions as to personal injuries, and the haste or lack thereof in obtaining the release. *See* Restatement (Second) of Torts § 152, comment f (1981).

*Williams,* 789 S.W.2d at 264. When mutual mistake is alleged, the task of the court is not to determine whether or not the release itself is valid, but whether the parties entered into an otherwise valid release under a mutual mistake. *Id.* at 265.

■ However, cautioned the court, the doctrine of mutual mistake must not routinely be available to avoid the results of an unhappy bargain. Parties should be able to rely on the finality of freely bargained agreements. *Id.* However, in narrow circumstances, a party may raise a fact issue for the trier of fact to set aside a release under the doctrine of mutual mistake. We do not believe that Sweeney has raised a fact issue sufficient to go to the fact finder on the issue of mutual mistake.

First of all, both parties had full knowledge of the facts surrounding Sweeney's termination at the time the release was signed, unlike the facts in *Williams.* Second, the amount of consideration paid, while just above the amount awarded by the IAB, is not so inadequate as to cast uncertainty on the extent of the release. Mere pecuniary insufficiency of consideration is not sufficient legal reason to set aside an otherwise enforceable release. *Hayes v. Roux Laboratories, Inc.,* 443 S.W.2d 621 (Tex.Civ.App.—Eastland 1969, no writ). Third, the parties negotiated the terms and the amount of the release extensively before this final agreement for judgment was reached. Finally, this case had been pending since immediately after the injury. Sweeney produced no evidence that he was pressured to sign the release, or that he was fraudulently induced to sign.

Instead, this case resembles the case of *Torchia v. Aetna Cas. and Sur. Co.,* 804 S.W.2d 219, 222–224 (Tex.App.—El Paso 1991, writ denied). After signing a release, Torchia sought to institute suit, not for the injury received, but for the tort of bad faith in handling his worker's compensation claim. The initial judgment in the *Torchia* case contains language similar to the language in the case at hand, in that the claimant released the insurer from all claims, arising out of the conduct of the insurer in handling the claim. The judgment further contained language to the effect that the court heard evidence and determined that the release was a fair settlement.

The judgment was approved and agreed to by Torchia and his attorney. In his settlement affidavit before the judgment was signed, Torchia acknowledged "that if

the Court approves the settlement, I shall not be able to collect any further monies or sums as a result of the injury made the basis of this suit or as a result of the manner in which the insurer handled my claim." *Torchia*, 804 S.W.2d at 222. Torchia claimed that the monies received pursuant to the release applied only to the compensation claim and not to the bad faith claim since the release of multiple claims requires separate consideration for each claim. *Id.* at 224.

In *Torchia*, the court held that by the very nature of the suit to set aside the IAB award because of questionable liability, by the finding of the court in its agreed judgment that liability was uncertain, and by Torchia's awareness that his claim could conceivably be defeated, both of these claims were unliquidated and the operative facts which could conceivably give rise to the bad faith claim were available to him and his attorney. *Id.*

The facts giving rise to Sweeney's wrongful termination claim were known to him the moment he was fired. As the release in *Torchia* specifically recited that it was a release of both the worker's compensation and bad faith claims, the release signed by Sweeney states on its face that it is a release of both the worker's compensation and wrongful termination claims.

Viewing the evidence in the light most favorable to Sweeney, we hold that his evidence of mutual mistake is not sufficient to raise a genuine issue of material fact as to the enforceability of the release. Sweeney's sole point of error is overruled, and the judgment of the trial court is affirmed.

MEYERS, J., dissents and files an opinion.

MEYERS, Justice, dissenting.

I respectfully dissent. The supreme court in *Williams* sets out the guidelines to be applied when a release sets out a bargain which was never made. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex.1990). The court held that whether the parties to the release intended to cover an unknown injury cannot always be determined exclusively by reference to the language of the release itself. *Id.* at 264. The question of mutual mistake is determined not by self-serving subjective statements of the parties' intent, which would necessitate trial to a jury in all such cases, but rather solely by objective circumstances surrounding execution of the release, such as the knowledge of the parties at the time of signing concerning the injury, the amount of consideration paid, the extent of negotiations and discussions as to personal injuries, and the haste or lack thereof in obtaining the release. *Id.*

In *Williams* the court found: 1) that Williams had never discussed nor bargained for settlement of a personal injury claim, and the amount of consideration was for the property damage to her car; 2) that she had no knowledge of the injury at the time of signing the release; and 3) State Farm had no knowledge of the injury. *Id.* And further, the release language was never explained nor discussed with her or her husband.

I find the facts in this case when applied to the test set out in *Williams* to raise a material issue of fact as to the enforceability of the release.

Here, Sweeney was represented by counsel when he signed the agreement for the court to enter final judgment in conformity with its terms. No testimony was taken at the hearing, and the only evidence before the court are the pleadings and the affidavits stating that Sweeney and his attorney never discussed the possibility of a wrongful termination suit with Taco Bell or the defense attorney. Applying the factors in *Williams*, first there was no evidence before the trial court that Sweeney had discussed or bargained for settlement of his claim for wrongful termination; the release language is couched in the middle of the agreement and appears only once; additionally, the judgment does not contain wrongful termination language at all. Secondly, the amount of consideration must be considered, and in the present case it was $8,000.00, of which $7,844.95 was for Sweeney's worker's compensation claim, thus, leaving little consideration if any for a

wrongful termination claim. Thirdly, there was no evidence before the trial court that Sweeney or Taco Bell had knowledge of the wrongful termination suit at the time of signing the release.

Further, *Torchia* which is cited by the court is not dispositive of the present case because the plaintiff in that case released a claim for the tort of bad faith rather than personal injuries which were unknown at the time of the release as in *Williams* and in the present case. *See Torchia v. Aetna Cas. and Sur. Co.*, 804 S.W.2d 219 (Tex. App.—El Paso 1991, writ denied).

Viewing the evidence in the light most favorable to Sweeney and applying the test in *Williams*, I find this evidence sufficient to raise a genuine issue of material fact that the release was signed by mutual mistake.