**Robert Allen GRIMES, Appellant,**

v.

**Reese Parker ANDREWS,
et al., Appellees.**

No. 10–98–245–CV.

Court of Appeals of Texas,
Waco.

Aug. 4, 1999.

John E. Wall, Jr. & Monte K. Hurst, Law Offices of John E. Wall, Jr., Dallas, for appellant.

Michael L. Scanes & Keith C. Cameron, Naman, Howell, Smith & Lee, P.C., Waco, for appellee.

Before Chief Justice DAVIS, Justice VANCE, Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

This is an appeal from the trial court's order granting summary judgment in favor of the Appellees, Reese Parker Andrews and Carolyn P. Andrews, d/b/a Andrews & Associates and Darren S. Obenoskey, individually. Appellant, Robert A. Grimes, complains that the trial court erred when it granted summary judgment because the Compromise Settlement Agreement released all of his claims against GTE and there were genuine issues of material fact as to whether Andrews & Associates and Obenoskey breached an owed duty to him, whether that breach proximately caused his injuries, whether he incurred damages as a result of the breach, and whether Andrews & Associates is liable for Obenoskey's conduct.

We affirm the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

Grimes worked at GTE Southwest, Incorporated ("GTE") as a Customer Service Specialist. On July 16, 1989, he was injured in the course and scope of his employment and filed suit against GTE's workers' compensation carrier, Lumbermens Mutual Casualty Company ("Lumbermens"). In 1990, Grimes hired Darren Obenoskey, an attorney in the law firm of Andrews & Associates, to represent him in his workers' compensation claim.

Grimes' workers' compensation claim was approved and Lumbermens filed suit to appeal the award. After GTE fired

Grimes in September of 1992, he hired his current counsel, John Wall, to represent him in a wrongful termination and discrimination suit against GTE.

In June of 1993, Grimes entered into mediation with Lumbermens concerning his workers' compensation claim. In exchange for $30,000 and the execution of a Compromise Settlement Agreement ("C.S.A."), Grimes settled his workers' compensation claim with Lumbermens. However, Grimes claimed that before he signed the C.S.A. he asked his attorney, Obenoskey, what effect it would have upon his wrongful termination and discrimination claims against GTE. Grimes claims that Obenoskey told him that the C.S.A. would have no effect upon his pending claims. Grimes claims that based upon Obenoskey's representations, he signed the C.S.A. on July 6, 1993.

On June 25, 1993, Grimes filed suit against GTE in federal court alleging claims of wrongful termination, discrimination because of his disability, and discrimination because he instituted a workers' compensation proceeding. GTE filed a motion for summary judgment on the grounds that Grimes' wrongful termination and discrimination claims were: (1) preempted by the Labor Management Relations Act and (2) barred as a matter of law because the C.S.A. released both Grimes' workers' compensation claim and his wrongful termination and discrimination claims against GTE. On March 22, 1994, before the court ruled on GTE's motion for summary judgment and on the advice of his current counsel, Grimes settled his wrongful termination and discrimination claims against GTE for $25,225.

On July 6, 1995, Grimes filed suit against Reese Parker Andrews and Carolyn P. Andrews d/b/a Andrews & Associates ("Andrews & Associates") and Obenoskey alleging that Obenoskey committed legal malpractice when he advised Grimes to sign the C.S.A., which he claimed released his wrongful termination and discrimination claims against GTE. On March 31, 1998, Andrews & Associates and Obenoskey filed their second motion for summary judgment in which they claim that there are no genuine issues of material fact or no evidence that:[1] (1) Obenoskey breached his duty to exercise ordinary care because the C.S.A. did not release Grimes' wrongful termination and discrimination claims against GTE; (2) Obenoskey's alleged breach was a proximate cause of Grimes' alleged injuries because Grimes cannot supply proof that "but for" Obenoskey's negligence he would have been successful in his subsequent claims against GTE; and (3) Andrews & Associates breached any duty to Grimes because they did not discuss with Grimes the possible effects of the C.S.A. The trial court granted Andrews & Associates' and Obenoskey's motion for summary judgment.

## SUMMARY JUDGMENT STANDARD OF REVIEW

The summary judgment movant bears the burden to prove that no genuine issue of material fact exists and that he is entitled to summary judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Delta Air Lines, Inc. v. Norris*, 949 S.W.2d 422, 425 (Tex.App.— Waco 1997, writ denied). If the movant is the defendant, he must conclusively negate at least one of the elements of the non-movant's cause of action or conclusively establish every element of his affirmative defense. *U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268 (Tex.1997).

---

1. Andrews & Associates and Obenoskey moved for both a traditional summary judgment and a "no-evidence" summary judgment. *See* Tex.R. Civ. P. 166a(i). In support of their motions they attached summary judgment evidence. Because a "no-evidence" motion for summary judgment should be made without presenting any evidence, we examine this appeal under the traditional summary judgment standard of review. *Ethridge v. Hamilton County Elec. Coop. Ass'n.*, 995 S.W.2d 292 (Waco, 1999, no pet. h.); *but see Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex.App.—Austin 1998, no pet. h.) (movant attached evidence to "no-evidence" motion for summary judgment).

When determining whether a material fact issue exists, we must accept as true all evidence favorable to the non-movant. *Nixon*, 690 S.W.2d at 548–49; *Delta Air Lines, Inc.*, 949 S.W.2d at 425. We must also resolve all doubts and indulge every reasonable inference in favor of the non-movant. *Nixon*, 690 S.W.2d at 549; *Delta Air Lines, Inc.*, 949 S.W.2d at 425. The purpose of a summary judgment proceeding is to determine if there are any questions of fact to be tried, not to try the cause by weighing the evidence or determining its credibility; or trying the cause by affidavit or deposition. *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952); *Walls v. First State Bank of Miami*, 900 S.W.2d 117, 123 (Tex.App.—Amarillo 1995, writ denied). Summary judgment is not intended to deprive the litigants of their right to a full hearing on the merits of any real fact issue. *Kim v. State Farm Mut. Auto. Ins. Co.*, 966 S.W.2d 776, 778 (Tex.App.—Dallas 1998, no pet.).

When the trial court does not specify the grounds for its granting of a movant's motion for summary judgment, as is the case here, we will affirm the judgment if any of the grounds advanced within the motion are meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993); William J. Cornelius and David F. Johnson, *Tricks, Traps, and Snares in Appealing a Summary Judgment in Texas*, 50 Baylor L.Rev. 813, 858 (1998).

■ In this case, the trial court granted Andrews & Associates' and Obenoskey's motion for summary judgment and denied Grimes' motion. The general rule is that a party cannot appeal the denial of a motion for summary judgment because it is an interlocutory order and thus, not appealable. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996); *Espinola v. Latting*, 971 S.W.2d 144, 144 (Tex.App.—Waco 1998, no pet.). However, when both parties move for summary judgment and the trial court grants one motion and denies the other, the non-

prevailing party may appeal both the prevailing party's motion as well as the denial of its own. *Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex.1996); *Cigna Ins. Co. of Tex. v. Rubalcada*, 960 S.W.2d 408, 411–12 (Tex.App.—Houston [1st Dist.] 1998, no pet.). We may affirm the trial court's order granting summary judgment or reverse and render judgment on the non-prevailing party's motion. *Holmes*, 924 S.W.2d at 922; *Duenas v. Garland Indep. Sch. Dist.*, 961 S.W.2d 19, 22 (Tex.App.—Dallas 1996, writ denied).

## THE C.S.A.

■ Grimes' first issue claims that the trial court erred when it denied his motion for summary judgment because the C.S.A. released his wrongful termination and discrimination claims against GTE and was enforceable by GTE against him.

■ A release surrenders legal rights or obligations between the parties to an agreement. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). In essence, a release operates to extinguish a party's claim or claims as effectively as would a prior judgment between the parties and is a bar to any right of action on the released matter. *Id.* A release is a contract and is subject to the same rules that govern contract construction. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex.1990); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Insurance Co. of North Am.*, 955 S.W.2d 120, 127 (Tex. App.—Houston [14th Dist.] 1997, pet. denied).

■ Whether a contract is ambiguous is a question of law which the court determines by examining the contract as a whole, in light of the circumstances present when the parties entered into the contract. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). A court may conclude that a contract is ambiguous even when the parties

do not plead ambiguity. *Sage Street Assoc. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex.1993). A contract is not ambiguous when it is so worded that it can be given a certain or definite legal meaning or interpretation. *State Farm Fire and Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex.1998); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Kelley–Coppedge, Inc.*, 980 S.W.2d at 464; *Coker*, 650 S.W.2d at 393–94. An ambiguity does not arise merely because the parties advance conflicting interpretations. *Kelley–Coppedge, Inc.*, 980 S.W.2d at 465; *Vaughan*, 968 S.W.2d at 933. Only when a contract is susceptible to two or more reasonable interpretations, after applying the applicable rules of contract construction, will a court hold that the contract is ambiguous. *Kelley–Coppedge, Inc.*, 980 S.W.2d at 465; *Columbia Gas Transmission Corp.*, 940 S.W.2d at 589. If a contract is ambiguous, then a fact issue exists on the parties' intent and summary judgment is not proper. *Columbia Gas Transmission Corp.*, 940 S.W.2d at 589; *Coker*, 650 S.W.2d at 394. However, the interpretation of an unambiguous contract is a question of law. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex.1997).

 When examining a contract, we must attempt to give effect to all contract provisions so that none will be rendered meaningless. *Kelley–Coppedge, Inc.*, 980 S.W.2d at 464. No single provision will be controlling, rather all provisions will be considered with reference to the entire contract. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). We presume that parties to a contract intend every clause to have some effect. *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996). We give terms their plain, ordinary, and generally accepted meaning unless the contract shows that the parties used them in a technical or different sense. *Heritage*, 939 S.W.2d at 121. When harmonizing contract provisions, the terms stated earlier in the contract must be favored over subsequent terms. *National Union Fire Ins. Co. of Pittsburgh, Pa.*, 955 S.W.2d at 127.

 There are additional rules governing the interpretation of releases. *See id.* at 128. To effectively release a claim, the releasing document must "mention" the claim. *Memorial Med. Ctr. of East Tex. v. Keszler*, 943 S.W.2d 433, 434–35 (Tex.1997); *Victoria Bank and Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex.1991). Even if the claims exist when the release is executed but are not clearly within the subject matter of the release, they are not discharged. *Victoria*, 811 S.W.2d at 938. We construe general categorical releases narrowly. *Id.* Further, we construe a release in light of the facts and circumstances surrounding its execution. *Victoria*, 811 S.W.2d at 939; *Tricentrol Oil Trading, Inc. v. Annesley*, 809 S.W.2d 218, 221 (Tex.1991); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 955 S.W.2d at 127–28.

Grimes claims that GTE was either a party to the C.S.A. or a third party beneficiary to the C.S.A. and as such, can enforce the C.S.A. against him. However, Andrews & Associates and Obenoskey argue that the scope of the C.S.A. was limited to Grimes' workers' compensation claim and did not encompass Grimes' wrongful termination and discrimination claims. Andrews & Associates and Obenoskey further claim that GTE was not a party to the C.S.A. and did not pay any consideration for the release and therefore, cannot enforce it against Grimes. The relevant portions of the C.S.A. are as follows:

NO. 296–422–92

*COMPROMISE SETTLEMENT AGREEMENT*

The Defendant, R. (ROBERT) A. GRIMES, in the above-entitled and numbered cause, joined herein by Defendant's attorney of record, and Plaintiff, LUMBERMENS MUTUAL CASUALTY COMPANY, acting by and

through its attorney of record, do hereby stipulate and agree upon a satisfactory compromise and settlement of any and all issues involved herein upon the following basis:

Defendant, R. (ROBERT) A. GRIMES, agrees to accept the sum of THIRTY THOUSAND AND NO/100 DOLLARS ($30,000) in full settlement, compromise, and acquittance of all the issues involved in the above-entitled and numbered cause, including all claims and demands, actions and causes of action for compensation pursuant to the provisions of the Workers' Compensation Law of the State of Texas growing out of, or connected in any way with, an accident alleged to have occurred in Collin County, Texas, on or about July 16, 1989, when the said Defendant, R. (ROBERT) A. GRIMES, claims to have been in the course of employment for GTE Southwest, Inc. (hereinafter referred to as "GTE Southwest, Inc." or "Employer") which employer is alleged to have been a subscriber to the Worker's Compensation Law of the State of Texas and carried a policy of such insurance with the Plaintiff, LUMBERMENS MUTUAL CASUALTY COMPANY, herein, and from any and all claims for compensation in connection with the claim filed by Defendant, R. (ROBERT) A. GRIMES, before the Texas Workers' Compensation Commission in 89–178042–WA and styled as "R. (Robert) A. Grimes," and from any and all claims, demands, actions, and causes of action of whatever kind or character as set forth and alleged in the Defendant's pleadings filed in the above-entitled and numbered cause against the Plaintiff herein; and in consideration of such full and complete release. The Plaintiff, LUMBERMENS MUTUAL CASUALTY COMPANY, agrees to pay all past reasonable medical expenses which were necessary to treat the injury made the basis of the captioned cause and heretofore have been incurred by the Defendant, R. (ROBERT) A. GRIMES, but Plaintiff, LUMBER-

MENS MUTUAL CASUALTY COMPANY, shall have no obligation to pay any future medical expenses hereunder incurred by Defendant, R. (ROBERT) A. GRIMES, after June 30, 1993.

This agreement is contingent in its entirety upon Defendant, R. (ROBERT) A. GRIMES receiving a disability/impairment rating provided to Plaintiff, LUMBERMENS MUTUAL CASUALTY COMPANY on or before June 30, 1993, that will terminate all further indemnity and/or impairment payments potentially due and owing to Defendant, R. (ROBERT) A. GRIMES arising out of his alleged back injury in July, 1991;
. . .

* * *

It is further understood and agreed between the parties hereto that the liability of the Plaintiff, LUMBERMENS MUTUAL CASUALTY COMPANY, and the Employer, GTE Southwest, Inc., as well as the extent of alleged injury of the Defendant, R. (ROBERT) A. GRIMES, are indefinite, uncertain, and incapable of being satisfactorily established, and the Defendant, R. (ROBERT) A. GRIMES, therefore, further releases the Plaintiff, LUMBERMENS MUTUAL CASUALTY COMPANY, and the Employer, GTE Southwest, Inc., from any and all liability, including but not limited to past and future pain and suffering, past and future loss of wages or earning capacity, physical impairment, loss of use, loss of services or consortium, past and future disability, property damages, punitive or exemplary damages, consequential damages, past and future compensation, and for past and future medical expense incurred or to be incurred as a result of the injuries alleged by Defendant, R. (ROBERT) A. GRIMES, as filed in the pleadings of the captioned cause, except as provided herein.

* * *

Because we find only one reasonable interpretation of the C.S.A. after application of the canons of construction, the C.S.A. is unambiguous and therefore, our interpretation of the C.S.A. is a question of law. We hold that the C.S.A. did not release Grimes' wrongful termination and discrimination claims against GTE.[2]

First, the "above-entitled and numbered cause" stated throughout the C.S.A. referred to NO. 296–422–92, the cause number for Grimes' workers' compensation suit. Grimes' federal wrongful termination and discrimination suit against GTE had the cause number 3–93–CV1547–X. When Grimes and Lumbermens entered into mediation and created the terms of the C.S.A., both parties knew that Grimes had filed suit against GTE in federal court. However, the C.S.A. referred to the cause number for Grimes' workers' compensation claim and not the cause number for Grimes' federal suit against GTE.

Next, according to the second paragraph of the C.S.A., Grimes agrees to a full settlement, compromise, and acquittance of all the issues involved in his workers' compensation claim, including all claims ... and causes of action for compensation: (1) "pursuant to the provisions of the Workers' Compensation Law of the State of Texas growing out of, or connected in any way with, an accident alleged to have occurred ... on or about July 16, 1989;" (2) "in connection with the claim filed by [Grimes] before the Texas Workers' Compensation Commission;" and (3) "of whatever kind or character set forth and alleged in [Grimes'] pleadings filed in the above-entitled and numbered cause against [Lumbermens.]" This paragraph describes the three types of claims that the C.S.A. operates to release. Each type of claim essentially describes the same thing—Grimes' workers' compensation claim for his accident on July 16, 1989. Therefore, the second paragraph's listing of the types of claims that Grimes released are no more than a varied description of the same thing—his workers' compensation claim. Grimes' wrongful termination and discrimination claims were not mentioned, even though Grimes had already filed suit against GTE at the time the C.S.A. was negotiated and signed. This omission by the parties must be given effect. We conclude that neither Grimes nor Lumbermens intended the C.S.A. to

2. Grimes asserts that we should take guidance from *Sweeney v. Taco Bell, Inc.* and hold that the C.S.A. released his wrongful termination and discrimination claims. 824 S.W.2d 289 (Tex.App.—Fort Worth 1992, writ denied). However, *Sweeney* is not analogous to our present situation.

In *Sweeney*, the plaintiff was injured at work and filed a workers' compensation claim. After returning to work, the plaintiff was fired, allegedly because of the defendant's dissatisfaction with his work. Thereafter, both parties appealed the plaintiff's workers' compensation award and agreed to a compromise settlement. The plaintiff agreed to a full release of "any and all claims for alleged disability resulting from the described accident and damages, if any, **allegedly resulting from John R. (Robert) Sweeney's termination** ..." *Id.* at 290 n. 1. The plaintiff then filed suit against the defendant for wrongful termination and the defendant filed a motion for summary judgment alleging the affirmative defense of release. The trial court granted summary judgment and the plaintiff appealed on the grounds of mutual mistake. The Court stated that in narrow circumstances a party may raise a fact issue and set aside a release under the doctrine of mutual mistake. *Id.* at 292. The Court enunciated several factors to be used when examining whether a fact issue of mutual mistake is present and held that the plaintiff did not produce sufficient evidence to raise such a question of material fact. *Id.* at 293.

In *Sweeney*, unlike our present case, both parties agreed that the compromise settlement released the plaintiff's wrongful termination claims. The issue before the Court was whether there was sufficient evidence to void the release on the grounds of mutual mistake. *Id.* at 291. Grimes' reliance on the *Sweeney* factors is misplaced. The *Sweeney* Court used the factors to examine whether the parties entered into the release under a misconception or ignorance of a material fact that would void the release, not to determine whether the compromise settlement actually released his claims. *Id.*

release Grimes' wrongful termination and discrimination claims.

Moreover, the second paragraph states in part, that Grimes agrees to release any claims "growing out of, or connected in any way with, an accident alleged to have occurred .... on or about July 16, 1989." One might argue that this categorical release "mentioned" Grimes' wrongful termination and discrimination claims and was specific enough to release these claims. However, we must construe categorical releases narrowly and examine the C.S.A. in light of the facts and circumstances surrounding its execution. Both parties entered into mediation for the purpose of settling Grimes' workers' compensation claim against Lumbermens. Because Grimes had already filed suit against GTE in federal court on June 25, 1993, when he signed the C.S.A. on July 6, 1993, GTE likely knew that Grimes had other claims against it and knew the specific nature of those claims. Yet, the C.S.A did not contain language that specifically enumerated those federal claims.

Additionally, the fourth paragraph states that because the extent of Grimes' injuries are indefinite and uncertain, that Grimes released Lumbermens and GTE from any and all liability "... incurred or to be incurred as a result of the injuries alleged by Defendant, R. (ROBERT) A. GRIMES, as filed in the pleadings of the captioned cause." This paragraph simply states that as part of the terms of the C.S.A., Grimes released GTE from any and all liability for damages for his workers' compensation claim in cause number 296–422–92. The C.S.A. specifically lists the types of damages that Grimes released. These damages are such things as past and future pain and suffering, physical impairment, loss of use, and loss of services or consortium, damages that are typically incurred in a workers' compensation suit and not necessarily a wrongful termination and discrimination suit. Additionally, this paragraph does not mention the injuries that Grimes' alleged in cause number 3–93–CV1547–X, his federal suit against GTE for wrongful termination and discrimination.

Looking at the C.S.A. as a whole and keeping in mind the facts and circumstances surrounding its execution, we hold that it does not act to release Grimes' wrongful termination and discrimination claims against GTE. With no pertinent release, there is no question of material fact as to whether Obenoskey breached his duty to Grimes. Thus, summary judgment on behalf of the Appellees was proper.

We overrule Grimes' first issue.

The judgment of the trial court is affirmed.