## NO. 12-08-00384-CV

## IN THE COURT OF APPEALS

## TWELFTH COURT OF APPEALS DISTRICT

## TYLER, TEXAS

| | | |
|---|---|---|
| *MIGUEL LOPEZ,* *APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | | |
| | § | *JUDICIAL DISTRICT COURT* |
| *THE GARBAGE MAN, INC. d/b/a THE G-MAN, INC., GARY HAWLEY, BRENDA HAWLEY, DAVID MUNOZ, ANTHONY JOHNSON, AND LORETTA AYRES,* | | |
| *APPELLEES* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Miguel Lopez appeals the summary judgment entered in favor of Appellees The Garbage Man, Inc. d/b/a The G-Man, Inc., Gary Hawley, Brenda Hawley, David Munoz, Anthony Johnson, and Loretta Ayres. Lopez also appeals the trial court's denial of his no evidence motion for summary judgment. Lopez raises four issues on appeal. We dismiss for want of jurisdiction in part and affirm in part.

### BACKGROUND

On or about November 14, 2006, Lopez was working for The G-Man, Inc. as a "thrower" on one of its garbage trucks. Lopez was injured when a garbage can fell on his left hand from the mechanism on the truck designed to raise the can over the truck and empty it. Lopez was treated for his injuries, spent approximately eight days in the hospital, and, ultimately, had a majority of his left ring finger amputated.

Lopez returned to work as a "thrower" on February 16, 2007. On or before this date, Lopez and Appellees commenced a series of negotiations concerning Lopez's being compensated for his injury and the resulting medical treatment. During the period of

1

negotiations, multiple persons assisted Lopez with translation and interpretation of the proposed agreement because Lopez could not read or understand English. Following the parties' first meeting, Lopez was provided with a copy of the proposed agreement for his further review. The parties later reconvened, but parted ways without reaching an agreement. Lopez again took the proposed release agreement with him.

Upon the parties' third meeting, Lopez was assisted by a certified interpreter, Norma Meeks.[1] Meeks translated the agreement for Lopez from English to Spanish and sought to assure that Lopez understood the terms of the agreement. Thereafter, Lopez executed the agreement. Under the terms of the agreement, Appellees[2] agreed to pay Lopez $5,000.00 in $100.00 monthly increments. The parties further agreed to "carve out" of the release Lopez's past medical expenses and reasonable and necessary future medical expenses. In exchange, Lopez agreed to release Appellees from all claims, including claims for negligence and gross negligence, and to indemnify Appellees against any future claims and demands in the event that any suit predicated on the same event or events was instituted against Appellees.

Lopez's employment was terminated in July 2007. On November 1, 2007, Lopez filed the instant suit against Appellees alleging that they were liable to him for his previous injury under theories of negligence and negligence per se. Lopez also sought to recover exemplary damages and to pierce the corporate veil of The Garbage Man, Inc. Appellees filed a counterclaim asserting that Lopez breached the release agreement.

Subsequently, Brenda Hawley filed a no evidence motion for summary judgment. Lopez filed a response. On May 9, 2008, the trial court granted Ms. Hawley's no evidence motion and ordered that Lopez's causes of action against her be severed and dismissed with prejudice.[3]

On May 28, 2008, Appellees[4] filed their Third Amended Motion for Summary Judgment on Lopez's negligence causes of action based on their affirmative defense of release. Soon

---

[1] The record reflects that, at some point in time, Meeks advised Lopez to consult an attorney before signing the agreement.

[2] Only Lopez, Gary Hawley, and The Garbage Man, Inc. are specifically named as parties to the release agreement. Accordingly, any reference to "Appellees" as parties to the agreement does not necessarily include an unnamed party. Lopez has not argued that Appellees Brenda Hawley, David Munoz, Anthony Johnson, or Loretta Ayres are not parties to the release by their status as employees of The Garbage Man, Inc. However, we note that the release makes reference to general categories of individuals that are bound by the release.

[3] Lopez notes in his brief that no new cause number was assigned to his severed causes of action against Brenda Hawley.

2

thereafter, Lopez filed a no evidence motion for summary judgment against Appellees arguing that there was no evidence to support that the release complied with Texas Labor Code, subsections 406.033(f) and (g). The parties each filed a response to the other's motion. As part of his response, Lopez made multiple objections to Appellees' motion and supporting evidence. Ultimately, the trial court overruled Lopez's objections, granted Appellees' Third Amended Motion for Summary Judgment, and denied Lopez's no evidence motion. The parties nonsuited their remaining causes of action against one another, and this appeal followed.

## OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

In his first issue, Lopez argues that the trial court erred when it overruled his objections to Appellees' motion for summary judgment. Specifically, Lopez argues that the trial court erred in overruling the following objections: (1) Appellees' motion failed to address his claims for piercing the corporate veil and exemplary damages based upon malice and/or fraud; (2) Appellees' motion failed to show that there is no genuine issue as to any material fact and that Appellees are entitled to judgment as a matter of law; (3) the verification attached to Appellees' motion (a) did not constitute summary judgment evidence, (b) did not authenticate any documents attached to it, (c) was not based upon the affiant's personal knowledge because it qualified the correctness of the subject information, and (d) did not state that the documents attached are true and correct copies of the originals in the affiant's possession or true and correct copies of certified copies on file with the court; (4) the documents contained in Exhibits "A" and "I" to Appellees' motion are unauthenticated photocopies and are not competent summary judgment evidence; (5) Appellees' motion contains Lopez's original answer to their counterclaim, a pleading that is not summary judgment evidence; and (6) neither Appellee Loretta Ayres's affidavit nor the documents attached to it demonstrate that Lopez was not under duress when he executed the release or that Ayres delivered paychecks to Lopez when he was in the hospital.

**Standard of Review**

We review a trial court's ruling on an objection to summary judgment evidence for an abuse of discretion. *See **Cruikshank v. Consumer Direct Mortgage, Inc.**, 138 S.W.3d 497, 499

---

[4] When referring to Appellees' Third Amended Motion for Summary Judgment, the term "Appellees" does not include Brenda Hawley.

3

(Tex. App.–Houston [14th Dist.] 2004, pet. denied) (citing *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995)). A trial court abuses its discretion if it acts without reference to guiding rules or principles. *Williams v. Brown*, 33 S.W.3d 410, 411 (Tex. App.–Houston [1st Dist.] 2000, no pet.).

## Motion Failed to Address Claims for Piercing Corporate Veil and Exemplary Damages

Lopez first objected that Appellees' motion failed to address his claims for piercing the corporate veil and exemplary damages based upon malice and/or fraud. A defendant moving for summary judgment must either negate at least one essential element of the nonmovant's cause of action or prove all essential elements of an affirmative defense. *See Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Here, Appellees raised the affirmative defense of release. *See* TEX. R. CIV. P. 94. As set forth in greater detail herein, to establish this affirmative defense, Appellees were required to demonstrate that (1) by a valid release, (2) Lopez agreed that a duty or obligation owed to him by Appellees is discharged immediately on the occurrence of a condition, and (3) the release mentioned the claim to be released. *See Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508 (Tex. 1993); *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991). Recovery of exemplary damages requires a finding of an independent tort with accompanying actual damages. *See Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998). Furthermore, they are designed to penalize a defendant for outrageous, malicious, or otherwise morally culpable conduct. *See Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 40 (Tex. 1998). Moreover, "piercing the corporate veil" is a theory utilized to impose individual liability upon shareholders, officers, and directors of a corporation, who are normally insulated from the corporation's liability. *See Phillips v. United Heritage Corp.*, 319 S.W.3d 156, 158 (Tex. App.–Waco 2010, no pet.). This theory is not a substantive cause of action. *See id.* (citing *Mapco, Inc. v. Carter*, 817 S.W.2d 686, 688 (Tex.1991)). Further still, neither of these theories is related to Appellees' affirmative defense of release. Therefore, we hold that Appellees were not required to address these theories in their motion for summary judgment. Accordingly, we conclude that the trial court did not abuse its discretion in overruling Lopez's objection.

## Motion Failed to Demonstrate Requirements of Texas Rule of Civil Procedure Rule 166a(c)

Lopez next objected that Appellees' motion failed to show that there is no genuine issue as to any material fact and that Appellees are entitled to judgment as a matter of law. We cannot

4

determine from this objection whether Lopez intended to challenge the sufficiency of Appellees' summary judgment motion or to object to the motion because he contended that Appellees were not entitled to summary judgment under rule 166a(c). Based on our review of Appellees' motion, we conclude that it is not insufficient under rule 166a(c). In their motion, Appellees argue that they are entitled to judgment as a matter of law on Lopez's negligence based claims as a result of Lopez's execution of the release agreement. Appellees further argue that there is no genuine issue of material fact underlying this affirmative defense. Finally, Appellees offer authority and citation to attached summary judgment evidence in support of their motion. To the extent Lopez's objection was based on the sufficiency of Appellees' motion, we conclude that the trial court did not abuse its discretion in overruling his objection. On the other hand, if the intended substance of Lopez's objection was that Appellees were not entitled to summary judgment, we will resolve this question in conjunction with our resolution of Lopez's second issue.

**Verification Attached to Appellees' Motion and Authenticity of Exhibits "A" and "I"**

Lopez further objected that the verification attached to Appellees' motion (a) did not constitute summary judgment evidence, (b) did not authenticate any documents attached to it, (c) was not based upon the affiant's personal knowledge, and (d) did not state that the documents attached are true and correct copies of the originals in the affiant's possession or true and correct copies of certified copies on file with the court. Appellees respond that the verification was not intended to constitute summary judgment evidence, but rather was intended to authenticate those exhibits to their motion that are not self-authenticating. Based on our review, only two of the exhibits relied upon by Appellees in their motion for summary judgment required authentication—Exhibit "A," the release agreement, and Exhibit "I," receipts for Lopez's medical bills.

The record indicates that Exhibit "A" was also an exhibit to Lopez's deposition. Lopez's deposition transcript is Exhibit "B" to Appellees' motion. When the release agreement became a deposition exhibit, Lopez, the deponent, who was subject to cross examination about the release agreement, affirmed that he previously had seen the document, and identified his signature at the bottom of it. At that point, the release agreement became competent summary judgment evidence. *See **Morgan v. Anthony***, 27 S.W.3d 928, 929 (Tex. 2000) (party's own interrogatory answer became competent summary judgment evidence when it became a deposition exhibit,

5

party affirmed in her deposition that it was correct, and party was subject to cross examination about the assertions in her interrogatory answer). Thus, we conclude that Exhibit "A" was properly authenticated.

We next consider whether Exhibit "I" was properly authenticated by Appellees' attorney's verification. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims. TEX. R. EVID. 901(a). Here, Appellees' counsel signed a notarized verification swearing, in pertinent part, as follows:

> I am the attorney for Defendants … in the above styled and numbered cause. I am fully qualified and authorized to make this Verification. The facts contained in Defendants' Third Amended Motion for Summary Judgment are true and correct based upon information and belief. Further, the exhibits attached hereto and incorporated herein are true and correct.

Exhibit "I" included a cover page that described the exhibit as "ZERO BALANCE RECEIPTS FOR MEDICAL BILLS FOR PLAINTIFF." Lopez argues that Appellees' counsel's broad description of the exhibits as being "true and correct" does not satisfy rule 901(a)'s requirement that the proponent demonstrate the document is what he claims. We agree with Lopez that Appellees' counsel's description of the exhibits as merely "true and correct" is a broad one. Moreover, a better description would be that, for instance, Exhibit "I" contains "true and correct copies of [Zero Balance Receipts for Medical Bills for the Plaintiff] the originals [of which are] in [my] possession." *See, e.g.,* **Brosseau v. Ranzau**, 81 S.W.3d 381, 393 (Tex. App.–Beaumont 2002, pet. denied). However, we note that the verification encompassed Exhibit "I." It is, therefore, reasonable that the description on the cover page was likewise encompassed by the verification. Thus, the trial court could have reasonably concluded that Appellees' counsel was swearing not only that the contents of Exhibit "I" are true and correct, but that the description of the exhibit on the cover page is also true and correct. We conclude that the trial court did not act without reference to guiding rules or principles when it determined that Appellees' counsel's verification supplied evidence sufficient to support a finding that Exhibit "I" is what Appellees' counsel claimed.[5]

Lopez further argues that Appellees' verification does not demonstrate that it is based on Appellees' counsel's personal knowledge because it is based on his subjective belief rather than

---

[5] Exhibit "I" is not necessary to or relied on in support of our analysis of Lopez's second issue.

his personal knowledge. Lopez asserts that this language qualifies Appellees' counsel's statement that the facts alleged and the exhibits attached are true and correct. A summary judgment affidavit does not need to recite the phrase "personal knowledge" if it is apparent that the affiant is testifying based upon personal knowledge. *See Cooper v. Circle Ten Council Boy Scouts of America*, 254 S.W.3d 689, 698 (Tex. App.–Dallas 2008, no pet.). Based upon our reading of Appellees' counsel's verification, we note that while he stated that the facts contained in Defendants' Third Amended Motion for Summary Judgment were based upon "information and belief," he unequivocally stated that "the exhibits attached hereto and incorporated herein are true and correct." Because Appellees rely on their counsel's verification solely as a means to authenticate certain exhibits that are not self-authenticating, any qualification of the truth or correctness of the facts contained in Appellees' motion for summary judgment does not affect the unqualified verification of the authenticity of the exhibits.

We conclude that the trial court did not abuse its discretion in overruling Lopez's objection to Appellees' counsel's verification or the exhibits it authenticated.

**Lopez's Original Answer to Appellees' Counterclaim Not Summary Judgment Evidence**

Lopez also objected to Appellees' Exhibit "C" to their motion, which consisted of Lopez's Original Answer to Appellees' Counterclaim. Lopez correctly asserts that pleadings are ordinarily not considered to be competent summary judgment evidence, even if sworn or verified. *See Mackey v. Great Lakes Invs, Inc.*, 255 S.W.3d 243, 252 (Tex. App.–San Antonio 2008, pet. denied). However, in the instant case, based on our review of their motion, Appellees are not relying on Exhibit "C" as summary judgment evidence. Rather, Appellees cite to Exhibit "C" in only one instance as a reference point for their description of Lopez's factual assertions made in his pleadings concerning his argument that Appellees procured his acquiescence to the release agreement by duress. Appellees' use of Exhibit "C" to outline the issue was appropriate. *See id.* Because Appellees do not cite Exhibit "C" as a factual basis for their motion for summary judgment, Lopez's objection is of no moment and was properly overruled. *See id.* at 253.

**Evidentiary Value of Ayres Affidavit**

Lopez finally objected that neither Appellee Ayres's affidavit, Exhibit "D," nor the documents attached to it demonstrate that Lopez was not under duress when he executed the release or that Ayres delivered paychecks to Lopez when he was in the hospital. Lopez's

7

objection does not address errors in the substance or form of Ayres's affidavit. Rather, he contends that it offers no evidentiary support to the facts alleged in Appellees' motion for summary judgment. This objection addresses the propriety of the trial court's summary judgment as opposed to a defect in the form of the Ayres affidavit. *Compare* TEX. R. CIV. P. 166a(c) *with* TEX. R. CIV. P. 166a(f). Accordingly, we hold that the trial court did not abuse its discretion in overruling Lopez's objection to Exhibit "D." We will address the issue of whether, based upon the summary judgment evidence, Appellees' were entitled to judgment as a matter of law in our discussion of Appellees' second issue.

Lopez's first issue is overruled.

## APPELLEES' MOTION FOR SUMMARY JUDGMENT

In his second issue, Lopez argues that the trial court erred in granting Appellees' Third Amended Motion for Summary Judgment.

### Standard of Review and Governing Law

Because the propriety of summary judgment is a question of law, we review the trial court's summary judgment determinations de novo. *See **Valence Operating Co. v. Dorsett***, 164 S.W.3d 656, 661 (Tex. 2005). The standard of review for a traditional summary judgment motion pursuant to Texas Rule of Civil Procedure 166a(c) is threefold: (1) the movant must show there is no genuine issue of material fact and he is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed, material fact issue precluding summary judgment, the court must take as true evidence favorable to the nonmovant; and (3) the court must indulge every reasonable inference from the evidence in favor of the nonmovant and resolve any doubts in the nonmovant's favor. *See* TEX. R. CIV. P. 166a(c); ***Nixon v. Mr. Prop. Mgmt. Co.***, 690 S.W.2d 546, 548–49 (Tex.1985); ***Palestine Herald-Press Co. v. Zimmer***, 257 S.W.3d 504, 508 (Tex. App.–Tyler 2008, pet. denied).

A defendant moving for summary judgment must either negate at least one essential element of the nonmovant's cause of action or prove all essential elements of an affirmative defense. *See **Randall's Food Markets, Inc.***, 891 S.W.2d at 644. We are not required to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits, depositions, exhibits and other summary judgment proof. *See **Gulbenkian v. Penn***, 151 Tex. 412, 252 S.W.2d 929, 932 (1952); ***Zimmer***, 257 S.W.3d at 508. The only question is whether or

not an issue of material fact is presented. *See* TEX. R. CIV. P. 166a(c). Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *See, e.g.,* **City of Houston v. Clear Creek Basin Authority**, 589 S.W.2d 671, 678–79 (Tex. 1979). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. **State Farm Fire & Cas. Co. v. S.S.**, 858 S.W.2d 374, 380 (Tex. 1993).

Appellees' motion for summary judgment was based on their affirmative defense of release. A release is an agreement or contract in which one party agrees that a duty or obligation owed by the other party is discharged immediately on the occurrence of a condition. **Dresser Indus.**, 853 S.W.2d at 508; **Williams v. Glash**, 789 S.W.2d 261, 264 (Tex. 1990); **Nat'l Union Fire Ins. Co. v. Ins. Co. of N. Am.**, 955 S.W.2d 120, 127 (Tex. App.–Houston [14th Dist.] 1997), *aff'd*, 20 S.W.3d 692 (Tex. 2000). A release extinguishes a claim or cause of action and bars recovery on the released matter. **Dresser Indus.**, 853 S.W.2d at 508.

A release agreement, valid on its face, is, until set aside, a complete bar to any action based on matters covered in the release. **Tamez v. SW Motor Transp., Inc.**, 155 S.W.3d 564, 569 (Tex. App.–San Antonio 2004, no pet.). To release a claim effectively, the releasing instrument must "mention" the claim to be released. **Brady**, 811 S.W.2d at 938. Any claims not "clearly within the subject matter" of the release are not discharged, even if those claims exist when the release is executed. **Id.** It is not necessary, however, for the parties to anticipate and explicitly identify every potential cause of action relating to the subject matter of the release. **Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.**, 20 S.W.3d 692, 698 (Tex. 2000). Although releases generally contemplate claims existing at the time of execution, a valid release may also encompass unknown claims and damages that develop in the future. **Id.** While Appellees have the burden of proving the affirmative defense of release, Lopez has the burden of proving that the release should be set aside. **Sweeney v. Taco Bell, Inc.**, 824 S.W.2d 289, 291 (Tex. App.–Fort Worth 1992, writ denied).

Like any other agreement, a release is subject to the rules of construction governing contracts, **Williams**, 789 S.W.2d at 264, including the tenet that courts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they

9

have not bargained.  *Tenneco, Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996). When construing a contract, courts must give effect to the true intentions of the parties as expressed in the written instrument.  *Lenape Res. Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996).  The contract must be read as a whole rather than by isolating a certain phrase, sentence, or section of the agreement.  *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995).  The language in a contract is to be given its plain grammatical meaning unless doing so would defeat the parties' intent.  *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999).

In the case at hand, the undisputed summary judgment evidence supports that Lopez signed the agreement and that his negligence based claims are within the subject matter of the released claims.  Lopez argues, however, that the release agreement should be set aside because (1) there is a fact issue concerning whether he had actual knowledge of the terms of the release agreement, (2) there is a fact issue regarding whether Lopez signed the agreement under duress, (3) Appellees failed to timely perform their obligations under the agreement or performed their obligations negligently, (4) the agreement is unconscionable, (5) the agreement fails to satisfy fair notice requirements, (6) Lopez's longstanding employment relationship with Gary Hawley (Hawley) created an informal fiduciary duty upon Appellees requiring a duty of full disclosure on their part, which Appellees failed to fulfill, and (7) Appellees fraudulently induced Lopez to enter into the agreement.

## Lopez's Actual Knowledge of the Terms of the Release Agreement

Lopez first argues that there is an issue of material fact concerning whether he had actual knowledge of the terms of the release agreement.  A release encompasses the contractual element of mutual intent and whether the minds of the parties have met.  *Tamez*, 155 S.W.3d at 570. Like Lopez, Tamez contended that because he was limited in his ability to read or write English, he was unable to understand a complex legal document such as a release agreement.  *See id.*  The court of appeals in *Tamez* was not swayed by this argument.  *See id.*  Similarly, based on the undisputed summary judgment evidence in this case, this court is not persuaded by Lopez's argument.

A person who signs a contract must be held to have known what words were used in the contract and to have known their meaning, and he must be held to have known and fully comprehended the legal effect of the contract.  *See id.* (citing *Nguyen Ngoc Giao v. Smith &*

*Lamm, P.C.*, 714 S.W.2d 144, 146 (Tex. App.–Houston [1st Dist.] 1986, no writ)). Moreover, illiteracy is no defense and will not relieve a party of the consequences of the contract.[6] *Tamez*, 155 S.W.3d at 570.

Here, the summary judgment evidence reflects Lopez executed the agreement with assistance from an interpreter and after having the opportunity to review the agreement over a period of months. Section D of the release agreement executed by Lopez states as follows:

> The undersigned further states that he has both read the foregoing Release and Agreement and has had the Release and Agreement read to him by a duly authorized and mutually-agreed upon interpreter, and knows the contents thereof, that he is aware of the legal consequences of the execution thereof and that he agrees to execute this Release and Agreement of his own free will.

Like the court in *Tamez*, we conclude that even though English was not Lopez's first language, he is presumed as a matter of law to have read and understood the contract unless he was prevented from doing so by trick or artifice.[7]

**Duress**

Lopez next argues that there is a material fact issue regarding whether he signed the agreement under duress. Specifically, Lopez contends that he was told by Hawley that he would not be permitted to return to work or to go on vacation until after he signed the agreement.

Duress is an affirmative defense in confession and avoidance of the affirmative defense of release. *Brown v. Cain Chem., Inc.*, 837 S.W.2d 239, 242–43 (Tex. App.–Houston [1st Dist.] 1992, writ denied). Generally, when one coerces another to execute a contract by taking undue or unjust advantage of the person's economic necessity or distress, the contract may be invalid or unenforceable. *Wright v. Sydow*, 173 S.W.3d 534, 543–44 (Tex. App.–Houston [14th Dist.] 2004, pet. denied). This legal theory is called economic duress. *Id.* at 544. It requires both the acts or conduct of the opposing party and the necessities of the alleged victim or his fear of what a third person might do. *Id.* The victim's plight alone will not suffice; it must be coupled with the bad acts of the transgressor. *Id.* The mere fact that a person enters into a contract with

---

[6] Absent proof of mental incapacity, a person who signs a contract is presumed to have read and understood the contract, unless he was prevented from doing so by trick or artifice. *See Tamez*, 155 S.W.3d at 570 n.3.

[7] Later in his brief, Lopez contends that Appellees fraudulently induced him to enter into the agreement. We recognize that the presumption that Lopez read and understood the contract could be rebutted based on our resolution of his fraud contentions.

11

reluctance or as a result of the pressure of business circumstances, financial embarrassment, or economic necessity does not, of itself, constitute business compulsion or economic duress invalidating the contract. *See First Texas Sav. Ass'n of Dallas v. Dicker Ctr., Inc.*, 631 S.W.2d 179, 186 (Tex. App.–Tyler 1982, no writ).

What constitutes duress is a question of law for the court. *Wright*, 173 S.W.3d at 544. Economic duress consists of (1) a threat to do something a party has no legal right to do, (2) an illegal exaction or some fraud or deception, and (3) an imminent restraint that destroys the victim's free agency and leaves him without a present means of protection. *Id.*

Here, even if we were to agree that Hawley's conduct amounted to a threat, there is no evidence that the threatened action was imminent. The deposition testimony of Norma Meeks, the interpreter, was unequivocal that no statement of any kind was made by Appellees concerning Lopez's job being in jeopardy if he did not sign the agreement on the day the agreement was executed. On the other hand, Lopez's deposition testimony regarding the timing of these "threats" is vague at best. According to Lopez's testimony, any "threat" regarding his not being allowed to return to work unless he signed the agreement was made on or before February 2007. Lopez returned to work for Appellees on or about February 16, 2007 and continued to work for them while the parties negotiated the agreement.

Furthermore, there is no indication from Lopez's deposition testimony or elsewhere in the summary judgment record that any "threat" regarding his not being permitted to take vacation time until he signed the agreement was made near to or in conjunction with his execution of the agreement on May 10, 2007. Rather, according to Lopez's testimony, Hawley made this statement to him at some point during the three month period of time when Lopez returned to work in February after Lopez made repeated requests that he be permitted to take vacation time. Lopez's vague description concerning the timing of this supposed threat is not enough to demonstrate that the threatened action was imminent. Moreover, there is no evidence that Lopez, during the period of time leading up to his execution of the agreement, voiced his dissatisfaction either with the agreement's terms or the statements he now claims constitute duress. *See, e.g., Bank of El Paso v. T.O. Stanley Boot Co.*, 809 S.W.2d 279, 289–90 (Tex. App.–El Paso 1991), *aff'd in part, rev'd in part on other grounds*, 847 S.W.2d 218 (Tex.1992); *Coppedge-Link ex rel. Coppedge v. State Farm Life Ins. Co.*, No. 03-03-00574-CV, 2004 WL 1572913, at *7 (Tex. App.–Austin July 15, 2004, pet. denied) (mem. op.). Therefore, based on

our review of the summary judgment record, we hold that the threats alleged by Lopez do not create a material fact issue on Lopez's affirmative defense of duress because there is no indication from the summary judgment record that the threatened actions were imminent.

## Appellees' Failure to Perform or Negligent Performance of Their Contractual Obligations

Lopez next argues that he was not obligated to perform under the release agreement or that the release should be set aside because Appellees failed to timely perform their obligations under the agreement or performed their obligations negligently. Specifically, Lopez argues that Appellees did not timely pay his medical bills.

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 907 S.W.2d at 520. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Id.*; *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex. 1962).

If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law. *Coker*, 361 S.W.2d at 393. The interpretation of an unambiguous contract is a question of law, which we review de novo. *See MCI Telecommunications Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999).

In interpreting a contract, we must presume that the parties thereto intended every clause to have some effect; therefore, we consider each part of the document with every other part of the document so that the effect and meaning of one part on any other part may be determined. *Thedford Crossing, L.P. v. Tyler Rose Nursery, Inc.*, 306 S.W.3d 860, 867 (Tex. App.–Tyler 2010, pet. denied). Moreover, we give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used such terms in a technical or different sense. *Id.* Finally, we enforce an unambiguous agreement as written. *Id.* We are not permitted to rewrite an agreement to mean something it did not. *Id.* We cannot change the contract simply because we or one of the parties comes to dislike its provisions or thinks that something else is

13

needed in it. *Id.* Parties to a contract are masters of their own choices and are entitled to select what terms and provisions to include in or omit from a contract. *Id.*

Here, Lopez advances several arguments based on timing of performance. He argues that Appellees failed to timely pay his medical bills and that their payment of his medical bills was a condition precedent to his obligations under the agreement. He further contends that the agreement contains no provision regarding the timing of Appellees' payment of his medical bills and is, therefore, either an unenforceable agreement to agree or "void for indefiniteness."

The parties' agreement stated, in pertinent part, as follows:

> For and in consideration of the sum of **FIVE THOUSAND AND NO/100 DOLLARS, TO BE PAID IN $100.00 INCREMENTS ON A MONTHLY BASIS**, the right and sufficiency of which are hereby acknowledged and confessed, the undersigned, **MIGUEL LOPEZ** …(hereinafter referred to as "Releasing Party") does hereby fully release and forever discharge (except as expressly provided below) **GARY HAWLEY and THE GARBAGE MAN, INC.** and affiliate and subsidiary companies, corporations and entities, and all of their past, present and future officers, directors, agents, servants, legal representatives, employees, partners, predecessors, administrators and assigns (hereinafter "Released Parties") of and from any and all claims, rights, actions and causes of action for property damage, personal injury, gross negligence, exemplary damages, loss of consortium, or any causes of action, if any, available to the Releasing Party under the Texas Insurance Code, Texas Common Law, Rules and Regulations of the Texas State Board of Insurance, The Texas Deceptive Trade Practices/Consumer Protection Act and the Common Law of Texas including the cause of action for Lack of Good Faith and Fair Dealing, treble and/or penalty damages, or any other relief, obligation, promises, judgments, contracts or execution, of any nature, in law or in equity, that the above-referenced claimants have asserted or may have the right to assert in the litigation set forth above, including any claims or counterclaims of any of the parties which were asserted or could have been asserted in the above-styled lawsuit, and any and all past, present and future claims, demands, debts, obligations, liability, rights, costs, expenses, compensation, actions or causes of action of any kind or character of damage, injury, harm, financial loss, medical expense, personal injury, property damage, interest or any other loss or damage whatsoever, and whether for compensatory [or] punitive damages, including, without limitation, any and all claims against which the **RELEASING PARTY** now has or may hereinafter acquire, or accrue on account of, or in any way growing out of, or incidental to the incident,[8] whether the same be now known or realized.

> The Releasing Party expressly reserves the right, and the parties mutually agree to carve out from the release and settlement agreement Releasing Party's claims, if any, to past medical expenses incurred and directly associated with the incident. The parties further agree to carve out any and all future treatment for injuries directly associated with the incident that are reasonably and medically necessary to treat the injuries provided that the Released Party is informed of the treatment in advance, and that the parties agree upon the chosen course of treatment.

---

[8] The "incident" was previously defined as "injuries sustained by [Lopez] to his left hand on November 14, 2006 while working for the Garbage Man, Inc."

14

*Certainty of Essential Contract Terms, Agreement to Agree in the Future, and Existence of a Condition Precedent*

A contract must be sufficiently definite in its terms so that a court can understand what the promissor undertook. **T.O. Stanley Boot Co. v. Bank of El Paso**, 847 S.W.2d 218, 221 (Tex. 1992). If an alleged agreement is so indefinite as to make it impossible for a court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable contract. **Engelman Irrigation Dist. v. Shields Bros.**, 960 S.W.2d 343, 352 (Tex. App.–Corpus Christi 1997), *pet. denied per curiam*, 989 S.W.2d 360 (Tex. 1998). In order for a court to enforce a contract, the parties must agree to the material terms of the contract. **T.O. Stanley Boot**, 847 S.W.2d at 221.

Similarly, a contract providing for an agreement to be negotiated in the future is void. *See* **Ski River Dev., Inc. v. McCalla**, 167 S.W.3d 121, 133–34 (Tex. App.–Waco 2005, pet. denied). The parties, however, may agree on some terms sufficient to create a contract, leaving other provisions for later negotiation so long as those terms are not material or essential. *Id*. at 134. However, those terms left for future negotiation are not part of the enforceable portion of the contract. *See* **Killion v. Lanehart**, 154 S.W.3d 183, 189 (Tex. App.–Amarillo 2004, pet. denied).

Ordinarily, time is not of the essence of a contract, and failure to perform on the exact date agreed upon is not such a breach that justifies a cancellation. **Laredo Hides Co., Inc. v. H & H Meat Products Co.**, Inc., 513 S.W.2d 210, 216 (Tex. Civ. App.–Corpus Christi 1974, writ ref'd n.r.e.). In order to make time of the essence of a contract, it must so provide by express stipulation, or there must be something in the nature of the subject matter, or connected with the purpose, of the contract and the circumstances surrounding it which makes it apparent that the parties intended that the contract be performed at or within the time specified. *Id.* Any intention to make time of the essence in the performance of a contract must be clearly manifested from a consideration of the contract as a whole, and when that intention is not made clear by the language in the contract itself, the surrounding circumstances may be taken into consideration in determining that question. *Id.* at 217.

Moreover, conditions precedent to an obligation to perform under a contract are those acts or events occurring subsequent to the making of a contract that must occur before there is a right to immediate performance and before there is a breach of a contractual duty. *See* **Beacon**

*Nat'l Ins. Co. v. Glaze*, 114 S.W.3d 1, 2 (Tex. App.–Tyler 2003, pet. denied) (citing *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976)). In order to determine whether a condition precedent exists, the intention of the parties must be ascertained by looking to the contract as a whole. *See Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990). In construing a contract, forfeiture by finding a condition precedent is to be avoided when another reasonable reading of the contract is possible, when the intent of the parties is doubtful, or when a condition would impose an impossible or absurd result. *Criswell*, 792 S.W.2d at 948.

Here, the essence of the parties' contract is Lopez's agreeing to release Appellees from liability in exchange for Appellees' agreeing to pay Lopez five thousand dollars in monthly increments of one hundred dollars. Based on our reading of the contract, there is no uncertainty concerning these terms, and, thus, there exists a valid contract.

Appellees' failure to timely pay Lopez's medical bills as asserted by Lopez in his brief does not serve to derail the greater purpose embodied in the parties' agreement. Appellees' payment of Lopez's medical bills was not part of their consideration for Lopez's agreement to release Appellees from liability. Rather, Lopez's claims against Appellees for his medical bills, if any, were "carved out" of the claims Lopez agreed to release. In other words, Lopez did not agree to release those claims, if any. From our review of the contract as a whole, we conclude that the payment of Lopez's medical bills is not one of Appellees' obligations under the agreement, and is, therefore, not an essential term that requires a timing component. Nor is it a condition precedent to Lopez's obligation to release Appellees.

Furthermore, the summary judgment evidence supports that Appellees have fulfilled their obligation to Lopez under the agreement by paying him one hundred dollars monthly. Indeed, Lopez makes no contention in his brief that Appellees have failed to meet this obligation. Furthermore, we conclude that the obligation that Appellees pay Lopez monthly is sufficiently definite concerning their time of performance. Therefore, we hold that the essential terms of the parties' agreement were sufficiently definite and that the undisputed summary judgment evidence supports that Appellees had met and continued to meet their contractual obligations to Lopez.

**Unconscionability**

Lopez next argues that the agreement should not be enforced because it is unconscionable and that fact issues exist concerning whether Hawley took advantage of Lopez's lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

Whether a contract is unconscionable is a question of law for the court to decide. *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 815 (Tex. App.–Dallas 1999, no pet.). "Unconscionability" has no precise legal definition because it is not a concept but a determination to be made in light of a variety of factors. *Id.* In general, the term "unconscionability" describes a contract that is unfair because of its overall one-sidedness or the gross one-sidedness of its terms. *Id.* Although no single test exists to determine if a contract is unconscionable, we begin with two questions: (1) How did the parties arrive at the terms in controversy; and (2) are there legitimate commercial reasons which justify the inclusion of those terms? *Id.* at 815–16. The first question, described as the procedural aspect of unconscionability, is concerned with assent and focuses on the facts surrounding the bargaining process. *Id.* at 816. The second question, described as the substantive aspect of unconscionability, is concerned with the fairness of the resulting agreement.

By his claim of unconscionability, Lopez seeks to set aside the release. As such, his claim of unconsionability is an affirmative defense on which he has the burden of proof. *See* TEX. R. CIV. P. 94; *Saenz v. Martinez*, No. 04-07-00399, 2008 WL 4809217, at *8 (Tex. App.– San Antonio Nov. 5, 2008, no pet.) (mem. op.); *Sweeney*, 824 S.W.2d at 291. If the party opposing a summary judgment relies on an affirmative defense, he must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (citing *Clear Creek Basin Authority*, 589 S.W.2d at 678–79).

In the case at hand, Lopez focuses heavily in his brief on legal authority he claims supports his position that the release agreement was unconscionable. However, Lopez wholly fails to cite to any summary judgment evidence to support his position.[9] In the absence of any guidance from Lopez where the evidence supporting his unconscionability argument can be found, this court is not required to sift through a voluminous summary judgment record in search

---

[9] The statement of facts in Lopez's brief does not make mention of any details pertaining to the parties' negotiations leading up to the release agreement. Thus, we cannot rely on the facts and record citations set forth therein for guidance.

of evidence, if any, to support Lopez's argument that a fact issue exists on this claim. *See* TEX. R. APP. P. 38.1(i); *Aguilar v. Morales*, 162 S.W.3d 825, 838 (Tex. App.–El Paso 2005, pet. denied). We hold that as a result of his failure to properly cite to summary judgment evidence in support of his position, Lopez has waived his unconscionability argument.

**Fair Notice**

Lopez further argues that the agreement fails to meet the fair notice requirements as set forth in *Dresser Indus., Inc. v. Page Petroleum, Inc.* The fair notice requirement includes the conspicuousness requirement and the express negligence doctrine. *See Dresser Indus.*, 853 S.W.2d at 508.

*Conspicuousness*

The conspicuousness requirement mandates that the indemnity and release agreement be noticeable to a reasonable person. *Id.* More specifically, the supreme court in *Dresser* adopted the following definition of "conspicuous" as set forth in subsection 1.201(b)(10) of the Texas Business and Commerce Code:

> "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:
> (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
> (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

TEX. BUS. & COM. CODE ANN. § 1.201(b)(10) (Vernon 2009); *Dresser Indus.*, 853 S.W.2d at 509–10.

In the case at hand, the parties' agreement was entitled "**RELEASE AND AGREEMENT**." Just as it appears in this opinion, the title heading was in all capital letters, was in bold typeface, and was underlined. The title appeared alone at the top of the document. The document itself was four pages in length and solely comprised the parties' release and indemnity agreement. It was not buried or obfuscated by superfluous language or as part of a larger agreement between the parties. The subheadings "**B. Release**" and "**C. Indemnity**" were in bold typeface as they appear in this opinion and appeared on a separate line above the text

18

pertaining to them. The language underlying the "Indemnity"[10] section is particularly noteworthy since the entirety of the first paragraph of that section is written in all capital letters. This section begins, "FOR THE SAME CONSIDERATION, THE RELEASING PARTY HEREBY AGREES NEVER TO BRING SUIT IN ANY COURT AGAINST THE RELEASED PARTIES WITH RESPECT TO ANY CLAIM RELEASED HEREIN." Based on our review of the agreement, we hold that it is written such that a reasonable person against whom it is to operate ought to have noticed it.

*Express Negligence Doctrine*

We next consider whether the agreement satisfied the express negligence doctrine. Under the express negligence doctrine, a party seeking indemnity for the consequences of its own negligence must express that intent in specific terms within the four corners of the contract. ***Ethyl Corp. v. Daniel Const. Co.***, 725 S.W.2d 705, 707–08 (Tex.1987); ***U.S. Rentals, Inc. v. Mundy Serv. Corp.***, 901 S.W.2d 789, 791 (Tex. App.–Houston [14th Dist.] 1995, writ denied). The test is whether the parties made it clear that their intent is to exculpate a party for its own negligence. *See **Atlantic Richfield Co. v. Petroleum Pers., Inc.*** 768 S.W.2d 724, 726 (Tex. 1989).

In the instant case, the agreement set forth Appellees' intent in the first paragraph, in pertinent part, as follows:

> This is a release and settlement agreement between **MIGUEL LOPEZ** and **GARY HAWLEY and THE GARBAGE MAN, INC.** (collectively "the parties").… [T]his release and settlement agreement will act to release **GARY HAWLEY and THE GARBAGE MAN, INC.** from any and all claims that may be brought by **MIGUEL LOPEZ** for any and all injuries and damages, based on claims of negligence, gross negligence, or otherwise, suffered or incurred by **MIGUEL LOPEZ** on November 14, 2006 while performing work-place duties for **THE GARBAGE MAN, INC.**, specifically including, but not limited to injuries sustained on November 14, 2006 to the left hand of **MIGUEL LOPEZ**.

Furthermore, in the section entitled "Release," the agreement stated in pertinent part, as follows:

> **MIGUEL LOPEZ**, his heirs, executors, administrators, estate, legal representatives, assigns[,] and all others claiming under him (hereinafter referred to as "Releasing Party") does hereby fully release and forever discharge (except as expressly provided below) **GARY HAWLEY and THE GARBAGE MAN, INC.** and affiliate and subsidiary companies,

---

[10] We recognize that Lopez's agreement to indemnify Appellees is not at issue. However, the language in the section is relevant to the issue of release.

19

corporations and entities, and all of their past, present and future officers, directors, agents, servants, legal representatives, employees, partners, predecessors, administrators and assigns (hereinafter "Released Parties") of and from any and all claims, rights, actions and causes of action for property damage, personal injury, gross negligence, exemplary damages, [and] loss of consortium….

Based on our review of the parties' agreement, we hold that the terms of the agreement make it clear that the parties' intent was to exculpate Appellees for their own negligence.

### Actual Knowledge

Of course, we cannot overlook that the degree of conspicuousness or specificity of terms is of limited application here because it is undisputed that Lopez did not read or understand English. Nonetheless, we have previously held that Lopez is presumed as a matter of law to have read and understood the contract unless he was prevented from doing so by trick or artifice. *See Tamez*, 155 S.W.3d at 570. As such, Lopez's actual knowledge of the release negates the common law fair notice requirements of conspicuousness and the express negligence rule. *See Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004) ("[I]f both contracting parties have actual knowledge of the [agreement's] terms, [it] can be enforced even if the fair notice requirements were not satisfied[.]"); *Dresser Indus.*, 853 S.W.2d at 508 n.2.

## Fiduciary Relationship

Lopez next argues that this court should impose an informal fiduciary duty on Appellees because of the "special relationship of trust and confidence" that existed between Lopez and Appellees prior to and apart from the execution of the agreement. Specifically, Lopez argues that Appellees paid his medical bills related to a previous work related injury he suffered in August 2005 and he had no reason to suspect that Appellees would not pay for all of the medical bills he incurred as a result of the injury he received on November 14, 2006.[11] As a result, Lopez contends that he relied upon what Hawley told him he would receive in exchange for signing the agreement and signed the agreement based on the trust he placed in Hawley. Lopez further argues that this fiduciary relationship existed based on his having known Hawley prior to their working relationship and notes that Hawley encouraged him to learn English so that he might be eligible for a promotion.

It is well settled that "not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Meyer v. Cathey*, 167 S.W.3d 327,

---

[11] We note that Lopez has not argued on appeal that Appellees failed to pay his medical bills.

330 (Tex. 2005); ***Schlumberger Tech. Corp. v. Swanson***, 959 S.W.2d 171, 176–77 (Tex. 1997). Where the underlying facts are undisputed, determination of the existence, and breach, of fiduciary duties are questions of law, exclusively within the province of the court. ***Cathey***, 167 S.W.3d at 330; ***Nat'l Med. Enters. v. Godbey***, 924 S.W.2d 123, 147 (Tex. 1996). In certain formal relationships, such as an attorney-client or trustee relationship, a fiduciary duty arises as a matter of law. ***Johnson v. Brewer & Pritchard, P.C.***, 73 S.W.3d 193, 199 (Tex. 2002); *see also* ***Ins. Co. of N. Am. v. Morris***, 981 S.W.2d 667, 674 (Tex. 1998).

We also recognize the existence of an informal fiduciary duty that arises from a moral, social, domestic, or purely personal relationship of trust and confidence. *See* ***Cathey***, 167 S.W.3d at 331; ***Associated Indem. Corp. v. CAT Contracting, Inc.***, 964 S.W.2d 276, 287 (Tex. 1998); *see also* ***Schlumberger Tech. Corp.***, 959 S.W.2d at 176. However, in order to give full force to contracts, we do not create such a relationship lightly. ***Schlumberger Tech. Corp.***, 959 S.W.2d at 177. To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit. ***Cathey***, 167 S.W.3d at 331.

In ***Cathey***, the supreme court reversed the court of appeals' holding that an informal fiduciary relationship existed based on a business relationship. *See* ***id.*** at 333. In that case, Meyer hired Cathey and (1) the two worked on real estate development projects together for three years, (2) Cathey had a five percent partnership interest with Meyer in one of the prior projects, (3) Cathey trusted Meyer, and, (4) Cathey and Meyer were friends and frequent dining partners. *See* ***id.*** at 330–31. Here, Lopez's relationship with Hawley is more attenuated than the relationship between Cathey and Meyer. While Hawley testified at his deposition that he knew Lopez "long before hiring him[,]" there is no evidence concerning the degree of their relationship before Lopez worked for Appellees. Rather, Hawley testified that he knew Lopez because Lopez's children were in a youth group with which Hawley worked. Moreover, the summary judgment evidence does not demonstrate that the business relationship between Lopez and Hawley was of any greater significance than the business relationship between Meyer and Cathey. The business relationship between Meyer and Cathey involved the two working on real estate development projects together as well as a partnership agreement between the two on one of the projects. ***Id.*** at 330. Lopez worked for Appellees, but there is no evidence that he and Hawley worked closely with one another. Finally, the fact that Lopez trusted Hawley simply

21

does not transform their employer-employee relationship into a fiduciary relationship. *Id.* at 331. Therefore, we conclude that the summary judgment evidence does not support that Hawley or any of the other Appellees owed Lopez a fiduciary duty. *Id.*

### Fraudulent Inducement

Finally, Lopez argues that he was fraudulently induced to execute the agreement. Fraud is an affirmative defense to a party's failure to perform its obligation under a contract. *See* TEX. R. CIV. P. 94; *see also Sweeney*, 824 S.W.2d at 291; *Deer Creek Ltd. v. North Am. Mortg. Co.*, 792 S.W.2d 198, 201 (Tex. App.–Dallas 1990, no writ) (claim that release may be set aside if fraudulently induced is affirmative defense in nature of confession and avoidance). Accordingly, Lopez was required to come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment. *See Brownlee*, 665 S.W.2d at 112.

Once again, similar to his briefing of the issue of unconscionability, Lopez fails to cite to any summary judgment evidence to support his contentions that he was fraudulently induced to execute the agreement. We iterate that in the absence of any guidance from Lopez where the evidence supporting his fraudulent inducement argument can be found, this court is not required to sift through a voluminous summary judgment record in search of evidence, if any, to support Lopez's argument that a fact issue exists on this claim. *See* TEX. R. APP. P. 38.1(i); *Morales*, 162 S.W.3d at 838. We hold that as a result of his failure to properly cite to summary judgment evidence in support of his position, Lopez has waived his fraudulent inducement argument.

### Summation

Based on our review of the summary judgment record, we conclude the undisputed summary judgment evidence supports that Lopez signed the agreement and that his negligence based claims are within the subject matter of the release contained therein. We further conclude that Appellees' motion demonstrated that, based on this undisputed evidence, they were entitled to judgment as a matter of law. Lopez's several arguments on appeal that the release agreement should be set aside have either been waived or fail as a matter of law. Accordingly, we hold that the trial court did not err in granting Appellees' Third Amended Motion for Summary Judgment. Lopez's second issue is overruled. To the extent that any of Lopez's objections to Appellees' motion for summary judgment were dependent on our resolution of Lopez's second issue, we hold that the trial court did not abuse its discretion in overruling those objections.

22

## LOPEZ'S NO EVIDENCE MOTION FOR SUMMARY JUDGMENT

In his third issue, Lopez argues that the trial court erroneously denied his no evidence motion for summary judgment. After adequate time for discovery, a party without presenting summary judgment evidence may also move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The motion must state the elements as to which there is no evidence. *Id.* Once a no evidence motion has been filed in accordance with rule 166a(i), the burden shifts to the nonmovant to bring forth evidence that raises a fact issue on the challenged evidence. *See Macias v. Fiesta Mart, Inc.*, 988 S.W.2d 316, 316–17 (Tex. App.–Houston [14th Dist.] 1999, no pet.).

In the case at hand, Lopez filed a purported no evidence motion for summary judgment arguing that Appellees had no evidence to support their affirmative defense of release in light of the requirements of Texas Labor Code, subsections 406.033(f) and (g). Lopez specifically acknowledges the existence of the release in his motion, but argues extensively that the motion should be set aside for its failure to comply with subsections 406.033(f) and (g). Rule 166a(i) entitles Lopez to move for a no evidence motion for summary judgment on the essential elements of a claim or defense on which Appellees would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i). Here, if we construe Lopez's motion only under rule 166a(i), we must hold that the trial court properly denied his motion since Lopez, not Appellees, bore the burden of proving that the release should be set aside. *See Sweeney*, 824 S.W.2d at 291. However, it is clear from the substance of the motion that it should, in the interest of justice, be construed as both a no evidence and a traditional motion for summary judgment. *See, e.g., Binur v. Jacobo*, 135 S.W.3d 646, 650 (Tex. 2004).

When parties file cross motions for summary judgment, each party in support of its own motion necessarily takes the position that there is no genuine issue of fact in the case and that it is entitled to judgment as a matter of law. *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 364 (Tex.1966); *Lambrecht & Associates, Inc. v. State Farm Lloyds*, 119 S.W.3d 16, 20 (Tex. App.–Tyler 2003, no pet.). If one motion is granted and the other denied, we must review the summary judgment evidence presented by both sides and determine all questions presented. *Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). In so doing, we first review the order granting summary judgment, and if we determine the order was erroneous,

23

we review the trial court's action in overruling the denied motion. ***Lambrecht***, 119 S.W.3d at 20. We may then either affirm the judgment or reverse and render the judgment the trial court should have rendered, including one that denies both motions. ***Id.*** We may also render judgment for the other movant, provided that both parties sought final judgment relief in their cross motions for summary judgment. ***Id.***

In the case at hand, many of the requirements set forth above have already been addressed in our discussion of Appellees' motion for summary judgment. In the interest of clarity and to the extent that there exist minor variances between our discussion of Lopez's common law defenses to release and the requirements of subsections 406.033(f) and (g), we will address each subsection in turn and refer back to our discussion of Lopez's second issue where appropriate.

Subsections 406.033(f) and (g) state as follows:

> (f) A cause of action described by Subsection (a) may not be waived by an employee after the employee's injury unless:
>> (1) the employee voluntarily enters into the waiver with knowledge of the waiver's effect;
>> (2) the waiver is entered into not earlier than the 10th business day after the date of the initial report of injury;
>> (3) the employee, before signing the waiver, has received a medical evaluation from a nonemergency care doctor; and
>> (4) the waiver is in a writing under which the true intent of the parties is specifically stated in the document.
>
> (g) The waiver provisions required under Subsection (f) must be conspicuous and appear on the face of the agreement. To be conspicuous, the waiver provisions must appear in a type larger than the type contained in the body of the agreement or in contrasting colors.

TEX. LABOR CODE ANN. § 406.033(f), (g) (Vernon 2006).

**<u>The Employee Voluntarily Enters into the Waiver with Knowledge of the Waiver's Effect</u>**

As set forth previously, the summary judgment evidence indicates that Meeks provided translation services to Lopez in conjunction with his execution of the agreement. Meeks testified that she gave Lopez a literal translation of the document. Section D of the agreement states as follows:

> The undersigned further states that he has both read the foregoing Release and Agreement and has had the Release and Agreement read to him by a duly authorized and mutually-agreed upon interpreter, and <u>knows the contents thereof</u>, that he is <u>aware of the legal</u>

> consequences of the execution thereof and that he agrees to execute this Release and Agreement of his own free will.

(emphasis added). Thus, based on the plain language of the parties' agreement, Lopez knew the contents of the agreement, understood the consequences of his execution of the agreement, and made the agreement of his own free will. As before, we conclude that even though English was not Lopez's first language, based on the summary judgment evidence, he is presumed as a matter of law to have read and understood the contract unless he was prevented from doing so by trick or artifice. *See* **Tamez**, 155 S.W.3d at 570. We conclude that subsection 406.033(f)(1) is supported by the undisputed summary judgment evidence.

## Timing of Agreement Compared to Date of Initial Report of Injury

The summary judgment evidence reflects that Lopez's injury occurred on November 14, 2006. Lopez testified in his deposition that he reported the injury that same day. Lopez executed the agreement on May 10, 2007. Thus, we conclude that subsection 406.033(f)(2) is supported by the undisputed summary judgment evidence.

## Receipt of a Medical Evaluation From Nonemergency Care Doctor

Lopez's deposition testimony reflects that he spent eight days in the hospital following the accident and was seen by a doctor after his release from the hospital. We conclude that subsection 406.033(f)(3) is supported by the undisputed summary judgment evidence.

## Release Written and States Parties' True Intent

The release agreement is in writing. Furthermore, as set forth in our discussion of Lopez's second issue, the agreement set forth Appellees' intent in the first paragraph, in pertinent part, as follows:

> This is a release and settlement agreement between **MIGUEL LOPEZ** and **GARY HAWLEY and THE GARBAGE MAN, INC.** (collectively "the parties").… [T]his release and settlement agreement will act to release **GARY HAWLEY and THE GARBAGE MAN, INC.** from any and all claims that may be brought by **MIGUEL LOPEZ** for any and all injuries and damages, based on claims of negligence, gross negligence, or otherwise, suffered or incurred by **MIGUEL LOPEZ** on November 14, 2006 while performing work-place duties for **THE GARBAGE MAN, INC.,** specifically including, but not limited to injuries sustained on November 14, 2006 to the left hand of **MIGUEL LOPEZ**.

Furthermore, in the section entitled "Release," the agreement stated in pertinent part, as follows:

25

> **MIGUEL LOPEZ**, his heirs, executors, administrators, estate, legal representatives, assigns[,] and all others claiming under him (hereinafter referred to as "Releasing Party") does hereby fully release and forever discharge (except as expressly provided below) **GARY HAWLEY and THE GARBAGE MAN, INC.** and affiliate and subsidiary companies, corporations and entities, and all of their past, present and future officers, directors, agents, servants, legal representatives, employees, partners, predecessors, administrators and assigns (hereinafter "Released Parties") of and from any and all claims, rights, actions and causes of action for property damage, personal injury, gross negligence, exemplary damages, [and] loss of consortium….

We conclude that subsection 406.033(f)(4) is supported by the undisputed summary judgment evidence.

## Conspicuousness

We have previously held that the release was sufficiently conspicuous under Texas Business and Commerce Code, subsection 1.201(b)(10). Considering the release pursuant to subsection 406.003(g), we note that the release provisions appear on the face of the agreement. Furthermore, the waiver provisions appear in a type larger than the type contained in the body of the agreement. As set forth in our consideration of Lopez's second issue, the agreement contains the following language in all capital letters: "FOR THE SAME CONSIDERATION, THE RELEASING PARTY HEREBY AGREES NEVER TO BRING SUIT IN ANY COURT AGAINST THE RELEASED PARTIES WITH RESPECT TO ANY CLAIM RELEASED HEREIN." Based on our review of the agreement, this language properly embodies the "waiver provisions" set forth in the agreement and appears to this court to be printed in larger type than that contained in the body of the agreement. Therefore, we conclude that subsection 406.033(g) is supported by the undisputed summary judgment evidence.

## Summation

Because we have concluded that subsections 406.033(f) and (g) are supported by the undisputed summary judgment evidence, we hold that the trial court did not err in denying Lopez's motion for summary judgment. Lopez's third issue is overruled.

## BRENDA HAWLEY'S NO EVIDENCE MOTION FOR SUMMARY JUDGMENT

In his fourth issue, Lopez argues that the trial court erred in granting Brenda Hawley's no evidence motion for summary judgment. The record reflects that the trial court signed its order granting summary judgment in Brenda Hawley's favor on May 9, 2008. The trial court's order

26

further stated that "Plaintiff's causes of action as against Defendant Brenda Hawley are ordered severed from the case in chief and are therefore **DISMISSED WITH PREJUDICE AS TO THE REFILING OF THE SAME**."

When a severance order takes effect, the appellate timetable runs from the signing date of the order that made the judgment severed final and appealable. *See Martinez v. Humble Sand & Gravel, Inc.*, 875 S.W.2d 311, 313 (Tex. 1994). An order severing part of a lawsuit is effective when it is signed. *See McRoberts v. Ryals*, 863 S.W.2d 450, 452–53 (Tex. 1993). Thus, to timely appeal the trial court's grant of summary judgment in Brenda Hawley's favor, Lopez was required to file a notice of appeal on or before June 9, 2008.[12] Lopez filed his notice of appeal on or about September 24, 2008. Therefore, Lopez did not timely appeal the trial court's order granting summary judgment in Brenda Hawley's favor. *See* TEX. R. APP. P. 26.1 Accordingly, we are without jurisdiction to consider Lopez's fourth issue. *See* TEX. R. APP. P. 25.1.

## CONCLUSION

We lack jurisdiction to consider Lopez's fourth issue. Accordingly, we *dismiss* Lopez's appeal for *want of jurisdiction* insofar as it pertains to the trial court's summary judgment entered in favor of Brenda Hawley. Having overruled Lopez's first, second, and third issues, we *affirm* the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered March 31, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

---

[12] Lopez filed a motion to reconsider pertaining to Brenda Hawley's no evidence motion on July 31, 2008. Because this motion was not timely, *see* TEX. R. CIV. P. 329b(a), it did not extend the appellate timetables. In any event, Lopez's notice of appeal was filed more than ninety days after the trial court signed its order granting summary judgment in Brenda Hawley's favor and severing Lopez's cause of action against her. *See* TEX. R. APP. P. 26.1(a).